IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(ATLANTA)

| | |
|---|---|
| IN RE:<br>TIANA ROOKS<br><br>    Debtor.<br><br>_____<br><br>ALL 3 REALTY, LLC<br><br>    Movant<br><br>v.<br><br>TIANA ROOKS, Debtor<br>NANCY J. WHALEY, Trustee<br><br>    Respondents. | CASE NO. 20-71954<br>CHAPTER 13<br><br>JUDGE CAVENDAR<br><br><br><br>CONTESTED MATTER |

## <u>ALL 3 REALTY, LLC's MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

COMES NOW, ALL 3 REALTY, LLC (hereinafter, "All 3 Realty" or, alternatively, "Movant"), a creditor and party in interest in the above-captioned case, by and through its undersigned counsel, and, pursuant to 11 U.S.C. § 362(d), moves the Court for an order lifting the automatic stay (hereinafter, the "Motion"), respectfully showing this honorable Court as follows:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties including, but not limited to, the right to proceed with a Dispossessory Action.

2.

TIANA ROOKS (hereinafter, "Debtor") filed a voluntary petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code on November 20, 2020, and is, therefore, subject to the jurisdiction of the Court.

3.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §§ 362 and 363 and 1301(c).

4.

Movant is a landlord/creditor pursuant to a Residential Lease Agreement dated April 1, 2020 at a rate of $823.00.00 per month (hereinafter, the "Lease"). The Lease is executed by TIANA ROOKS, relative to certain property known as 7311 Howard Place, Jonesboro, Clayton County, GA 30236 (hereinafter, the "Property"). A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

5.

Movant avers that, pursuant to the terms and conditions of the Lease, Debtor is currently in default under the terms of the Lease for non-payment of rent in the amount of $3,570.00. This amount includes a post-petition default of rent for the month of December 2020.

6.

Movant further avers there is cause, including the lack of adequate protection, for granting Movant's Motion for Relief from Automatic Stay. Furthermore, the stay should be lifted as the Debtor does not have equity in the Property, and it is not necessary for an effective reorganization.

2

7.

Because the Lease so provides, the Debtor is responsible for Movant's reasonable attorney's fees. Upon belief, the filing of this Chapter 13 bankruptcy petition was done for the purpose of delaying a dispossessory action.

8.

Pursuant to 11 U.S.C. § 362(d), Movant is entitled to a termination of the automatic stay, with respect to its Property, since the lack of adequate protection exists.

9.

Movant requests that the provisions of Bankruptcy Rule 4001(a)(3) be waived and/or modified so as to allow Movant to proceed immediately with a dispossessory action in the Clayton County Magistrate Court.

WHEREFORE, Movant  ALL 3 REALTY, LLC prays for the following relief:

(a)      That this Court grant Movant's Motion for Relief From Stay;

(b)      That the automatic stay pursuant to § 362(d) of the Bankruptcy Code be terminated, annulled, modified, and lifted to permit Movant to pursue all remedies available under Georgia law to recover possession of the Property and to allow Movant to apply any security deposit held by Movant to any post-petition amounts which came due under the terms of the Lease, and that the property be abandoned as property of the estate;

(c)      That the Court waive and/or modify Bankruptcy Rule 4001(a)(3) so as to allow Movant to proceed immediately with a dispossessory action;

(d)      That the Court award Movant its attorney's fees and costs in bringing of this Motion; and

(e)      For such other and further relief as this Court deems just and equitable.

3

Respectfully submitted, this 3rd day of December, 2020.


THE GILROY FIRM                          /s/ Matthew F. Totten
3780 Mansell Road, Suite 140            MONICA K. GILROY
Alpharetta, Georgia 30022               (Georgia Bar No. 420527)
(678) 280-1922 (Telephone)              MATTHEW F. TOTTEN
(678) 280-1923 (Facsimile)              (Georgia Bar No. 798589)
Monica.Gilroy@gilroyfirm.com            ATTORNEYS FOR MOVANT
Matthew.Totten@gilroyfirm.com

4

**All 3 Realty LLC**



950 Eagles Landing Pkwy • Ste 487 • Stockbridge, GA 30281-7343
(678) 782-7447

# 1. Residential Rental Agreement

## 1.1 LANDLORD, TENANT, AND ADDRESS:

This Agreement (hereinafter "Lease") is between All 3 Realty , LLC  (hereafter "Management") and      Tiana Rooks

(hereinafter "Resident").  Management leases to Resident and Resident leases from Management the property

known as
 7311 Howard Place
 Jonesboro, GA 30236
(hereinafter "Premises") under the following conditions:

## 1.2 OCCUPANTS:

All adults intending to occupy Premises are listed above and agree to sign this Lease. Minors (under age 18) intending to occupy must be listed on this Lease and are:     Resident warrants the above mentioned persons shall be the only occupants of the Premises except for short-term visitors. Any new tenant must be approved by management prior to occupancy. Every resident 18 years of age or older is subject to the managers screening criteria including application processing fees.

## 1.3 ORIGINAL TERM AND RENEWALS:

**(a)** This Lease shall begin on  04/01/2020  (Rent starts on this date regardless of day of possession) and end at 12:00/noon the last day of  03/31/2021  (hereinafter referred to as the "Anniversary Date"). If Resident takes possession prior to the start date listed herein, the terms of this Lease shall apply from day of possession. If there is a delay in delivery of possession by Management, rent shall be abated on a daily basis until possession is granted. If possession is not granted within seven (7) days after the beginning of original term, then Resident may void this Agreement and have full refund of any deposit. Management shall not be liable for damages caused by a delay except as noted in this paragraph. If Resident delays in taking possession within seven (7) days of the agreed upon beginning date, they shall forfeit all deposits and be responsible for rent, utilities and lawn care until the day the Property is occupied by a new tenant. Should Resident fail to execute a new lease, this Lease reverts to a Tenancy at Will under Georgia Law after the Anniversary Date, and the rent amount shall automatically increase to 110% of the then Current Rent. Should Resident (or Management) thereafter desire to terminate this Lease, parties must give each other at least thirty (30) days written notice by certified mail, registered mail, or through online forms found at www.All3Realty.com.

**(b) Right to Terminate: Either party may terminate this Lease without penalty, on an Anniversary Date, with written notice given at least thirty (30) days prior to the Anniversary Date.**

**(c) Notice: Verbal notice is insufficient under any circumstance**. Written notice must be made through management website, by certified or registered mail, return receipt requested, and at least thirty (30) days prior to an Anniversary Date. Once 30-day website or written notice is provided, termination of a tenancy shall occur on the last day of the month.

(d) **Automatic Renewal:** This lease shall renew automatically on the Anniversary Date at a 3% increase. Upon automatic renewal lease terms are subject to change with  30 day written notice from management.

## 1.4 RENT:

**(a) Amount:** Rent of $ $823.00  (hereafter the "Current Rent") , along with the Resident Benefits Package of $25.00, for a total amount of

| | |
|---|---|
| Resident Benefit Package | $25.00 |
| Rent Income | $823.00 |
| **Total:** | **$848.00** |

is payable monthly in advance and is due the first of each month prior to midnight or it is considered "late." Rent start date has been established in stipulation 2(a) by agreement between the parties and may be different than the move-in date.

**(b) Late Charge:** If rent is not in Management's office by midnight on the fifth, Resident agrees to pay a late fee in the form of additional rent of *$100.00* . Payments sent via the US mail are done so at the sender's own risk. Rents will be considered unpaid until actually received by Management.

1

**(c) Rent Payments:** You are welcome to use checks to pay the rent but there may be a check processing fee. If rent is late, or your bank, for any reason, refuses any payment, said payment and fees must be made by certified funds. If any payment is returned, Resident agrees to pay a *$50.00* fee (plus the late charge) as described above. Management may, upon 15 day written notice, require certified funds for any reason.

**(d) Allocation of Payments:** All funds received from Resident shall first be applied to the oldest outstanding charge on the ledger, then rent.

**(e) Prohibition against Withholding Rent for Repairs**: The Resident is prohibited from making any repairs/renovations to the home without the express written consent of Management. In the event the Resident chooses to make any repairs/maintenance to the Property, with or without the consent of Management, Resident shall not under any circumstance deduct the sums of those repairs from any rents or fees due to Management.

## 1.5  SECURITY DEPOSIT AND ADMINISTRATIVE FEE:

**(a)** Resident agrees to pay a Non-Refundable Administrative Fee of $100.00 in addition to the Hold Money. Non-Refundable Administrative Fee is to paid in conjunction with the Hold Money.

**(b)** Resident agrees to pay Management  $750.00  as a Security Deposit for fulfillment of Resident's obligations under the terms of this Lease. Security Deposit must be paid in certified funds at time of move-in inspection. The Security Deposit only will be returned without interest within one (1) month after the termination of this Lease, or the surrender and acceptance of the Premises, unless retained by Management for such causes as provided in this Agreement.

**(c)** Resident acknowledges and agrees that said Security Deposit may be placed in an interest bearing account and that Management will retain the interest earned on said deposit. The Security Deposit shall be deposited and held in an Escrow Account with *SEACOAST COMMERCE BANK* which may change from time to time with 60-days written notice to Resident.

**(d)** Management may use, apply or retain all or part of the Security Deposit to the extent required for the payment of any sum which Resident owes to Management herein, or for any sum which Management (or the owner) may expend for actual damages (normal wear and tear excepted) arising out of or related to Resident's abandonment of the Premises or default in respect to any of the terms or provisions of the Lease, (provided that Management attempts to mitigate said actual damages), and including, but not limited to any repair, replacement, carpet cleaning, cleaning or painting of the Premises rendered necessary or desirable by reason of the negligence, carelessness, accident or abuse by Resident or the invitees, guests, or members of Resident's household beyond ordinary wear and tear, or to pay (or apply against) any other amounts owed by Residents to Management as permitted by law.

**(e)** The application of the Security Deposit shall at all times be at the sole discretion of Management in accordance with this Lease and Georgia Law. The appropriation of all or part of this Security Deposit shall not be an exclusive remedy for Management, but shall be cumulative and in addition to all other remedies of Management at law or under this Lease.

**(f)** Not withstanding the above, if there is a bona fide dispute over the Security Deposit, Management may, upon notice to all parties having interest in the security deposit, interplead the funds into a court of competent jurisdiction. Resident agrees to indemnify and hold Management harmless from and against all claims, suits and damages arising out of or related to the actions by Management of its duties hereunder.  **This Security Deposit may not be applied by Resident to rent under any circumstances.**

**(g)** Re-Key Fee is paid by Tenant upon Tenant vacating: $75.00

## 1.6  DAMAGE INSPECTION:

Resident acknowledges receipt of a comprehensive listing of any existing damages to the Premises, which receipt was prior to the tender of the Security Deposit. Resident must sign said list, or sign a written dissent listing damages he claims exists in Premises prior to occupancy. **RESIDENTS ARE ENCOURAGED TO REPORT EVERYTHING ON OR ABOUT THE PROPERTY OR ADJACENT STRUCTURE REQUIRING REPAIR NO MATTER HOW SLIGHT AT THE TIME OF MOVE-IN.** This will establish the initial condition according to the Resident.  Management will not repair any cosmetic or nonfunctional items such as carpet blemishes, chipped sinks, etc., nor do any painting inside or out or do any other repairs unless specifically agreed to by Management in writing prior to move-in. **The purpose of this inspection is to document the condition of the Premises before Resident takes possession, not to create a punch list of repairs to be completed."** The move-in inspection shall not be viewed by either party as a list of things promised to be repaired/replaced by Management. All Resident-requested repairs must be in writing. Resident assuming possession of the Premises shall be conclusive evidence that the Premises is accepted "as is" by Resident and is in safe and habitable condition.

## 1.7  DAMAGE INSPECTION AFTER TERMINATION:

Within three (3) Business days after the date of termination of occupancy, Management will inspect the Premises and compile a comprehensive list of any damages done to the Premises during Resident's occupancy which list shall be signed by Management.  Resident agrees to keep all utilities on, including electric, gas and water, from date of occupancy through the date of the move-out inspection. If any utility is off at the time of the move-out inspection Resident agrees to pay Management a *$100.00* (utility restoration fee) as well as all costs incurred by Management to restore/reconnect the utilities. If the Resident disputes the list, he shall have five (5) business days from the date of termination of occupancy to state specifically in writing items on the list to which he dissents and to deliver such list of dissentions to Management. If Resident fails to provide such a list of dissentions or fails to provide such a list in a timely fashion pursuant to the time frames contained in this paragraph, the list as compiled by the Management shall be deemed accurate, true and correct and comprehensive by the

Resident. If the Resident terminates occupancy without notifying Management, Management may make said move-out inspection within a reasonable time after discovering the termination of occupancy.  In the event Management elects to retain any part of the Security Deposit, Management shall provide Resident with a written statement setting forth the reasons for the retention of any portion of the Security Deposit within thirty (30) days of the Move-Out Inspection, and shall include with such statement any portion to be refunded.

## 1.8  INSPECTIONS:

All Residents are invited to appear for the move-in or move-out inspection. If less than all the Residents appear at inspections, all Residents herewith represent to Management that any Resident(s) who appear(s) at inspections is/are authorized to act for, and on behalf of, all Residents in conducting the move-in or move-out inspection. By the signature(s) below, Resident(s) acknowledge that he/she is authorized to conduct the inspections and review the report, and that he/she is expressly authorized to bind any and all other Residents who are entitled to occupy the subject Premises pursuant to this Lease for purposes of the inspections.

## 1.9  RIGHT OF ACCESS, SHOWING, LOCKS AND PROPERTY VISITS:

**(a) Right of Access:** Management's policy is to respect Resident's right of privacy, and right of quiet enjoyment of the Premises, and will attempt to contact Resident prior to visiting the Property. Management shall have the right of access of Premises for inspection and maintenance between 9 a.m. and 6 p.m. daily, except in case of emergency, as defined at the sole discretion of Management. Management may enter at any time to protect life or prevent damage to the Premises.

**(b) Showing:** During the last thirty (30) days of Resident's occupancy, Management's staff, its agents, or any licensed real estate agent, shall have the right to place yard signs on the Premises and shall have the unrestricted right of entry to Premises, via a lockbox and key, between the hours of 9 a.m. and 6 p.m. daily for the purpose of showing the Premises. Resident agrees to use prudent judgment in securing valuables at all times, but especially during the times the Premises may be for sale or lease, and agrees to hold Management harmless for any loss thereof. Should Resident attempt to limit or restrict said entry during these stated times, Resident shall be in default of this Lease and Management may retain Security Deposit as liquidated damages as the parties agree that it would be impossible to accurately estimate actual damages resulting from such breach and that the Security Deposit is reasonable compensation.

**(c) Locks and Alarm System**: Security systems or additional locks are encouraged and may be installed on the Premises upon notice to, and written permission from, Management. Upon receipt of written permission, which shall not be unreasonably withheld, Resident agrees to use the locksmith that Management recommends. Resident shall provide Management with duplicate keys (security codes) that open any and all locks (security systems) installed on the Premises, and all such items shall become fixtures of the Premises. Installation of additional locks (security systems) and duplicate keys will be at the Resident's expense. Should Resident change the locks (security system) and refuse to provide Management with duplicate keys (system codes) when asked, this will constitute Resident's breach of this Lease. Resident will forfeit their Security Deposit and will be responsible for any and all damages proximately caused by refusal to provide access as agreed. Should Resident change locks, or refuse to provide Management with a key when asked, Management may have the Premises re-keyed (security system re-coded) during Resident's stay, at the Resident's expense, and Management will supply Resident with a new key.

**(d) Property Visits:** Management intends to visit the Premises on a regular basis to stay informed as to its condition. Resident agrees to cooperate with this program and agrees to schedule inspections during regular business hours. If Resident insists on after hours (or a specific day/time) visits (evenings, weekends or holidays) Resident agrees to pay $*50.00* per event.  Resident may be present for said inspections but is not required to be.

**(e) Assigned Property Lockboxes:** Resident agrees to maintain combination lockbox assigned to property address. Resident agrees to ensure box is accessible with key upon request from management. Access to property includes but is not limited too periodical walk through, maintenance appointments, move outs, etc. Loss of combination box at the time of move out will result in a $50.00 fee.

## 1.10  SUBLETTING:

No subletting or assignment of this Lease is permitted. Assignment of any portion of this Lease or subletting any portion of Premises without obtaining written permission from Management shall be deemed a breach of this Lease and may result in termination.

## 1.11  SURRENDER OF PREMISES:

**(a) Delivery:** Resident shall deliver possession of Premises to Management in good order and repair upon termination or expiration of this Lease, leaving said Premises in a clean and sanitary condition. Said condition includes, but is not limited to, professionally cleaning carpets, cleaning of all appliances and removal of all trash, garbage, rubbish and personal property from the Premises and yard and returning keys to Property, mailboxes, amenities, and power garage door openers to Management. Should Resident fail to return (remove) said items Resident agrees to pay the cost of replacing, rekeying or removing same. Whenever Management is entitled to possession of the Premises under the terms of this Lease, Resident shall at once surrender Premises to Management.

**(b) Holdover:** Should Resident agree to be out of the Premises on a certain day and fail to do so, or leave substantial personal property inside the Premises preventing Management from taking back possession, Resident agrees to pay Holdover Rent at the rate of $*50.00* per day until Management is able to retake possession.

**(c) Abandonment:** Should Management discover, at any time during the term of this lease, that any utility service is off in the Property and, upon visiting the Property it is discovered that the Resident has substantially or fully vacated or abandoned the property, and after

reasonable steps to contact the Resident to provide notice of intent of Management to reclaim the property, Management may declare the Resident has abandoned/vacated the Property. Resident hereby grants permission to Management to retake possession, removing the Residents remaining personal property so as to protect the Property from deterioration, with the understanding that Resident will be unable to recover said property at a later date.  Resident agrees not to file any action against Management (wrongful dispossessory or unlawful eviction) for said action against Management.

**(d) Leaving Personal Property:** Should Resident leave personal property on or in Premises, after vacating/abandoning the Premises, Management is hereby authorized by Resident, and at Residents expense, to remove/discard said personal property.

## 1.12  USE:

Premises shall be used for residential purposes only and shall be occupied only by persons named in this Lease. Premises shall be used so as to comply with all state, county, municipal laws and local ordinances. Resident shall not use Premises, or permit same to be used, for any unlawful purpose or in any manner so as to interfere with other Resident's quiet enjoyment of their property. Any unauthorized use of the Premises shall be deemed an event of default of this Lease.

## 1.13  RESIDENT'S PROPERTY:

Management shall not be liable for damages to Resident's property of any type for any reason or cause whatsoever. Should Resident leave personal property on or around the Premises at move out, Resident agrees to reimburse Management for the actual costs of removal and/or storage of said property and shall hold Management harmless for the loss or destruction of same.

## 1.14  PEST CONTROL AND PETS:

**(a) Pests:** At all times during the occupancy of said Premises, Resident shall be responsible for pest control of all kinds, except for termites and rodents. Resident is encouraged to use licensed pest control contractors to treat for pest.

**(b) Pets:** See Pet and Service Animal Addendum.

## 1.15  INDEMNIFICATION:

Resident releases Management from liability for, and agrees to indemnify Management against, all losses incurred by Resident as a result of:

**(a)** Resident's failure to fulfill any condition of this Lease**;**

**(b)** Any damage or injury happening in or about the Premises to Resident, Resident's invitees or licensees of such person's property;

**(c)** Any judgment, lien, or other encumbrance filed against Premises as a result of Resident's action.

## 1.16  NO WAIVER:

Any failure of Management to seek redress of a violation of, or to insist upon the strict and prompt performance of, any covenants or conditions of this Lease, shall not operate as waiver of any such violation or of Management's right to insist on prompt compliance in the future with such covenant or condition, and shall not prevent a subsequent action by Management for any such violation. Acceptance by Management of any late payment of rent, or additional rent, shall not constitute a waiver of any rights of Management, including without limitation, the right to terminate this Lease as herein provided. The receipt of any rent, or additional rent, by Management with the knowledge of such breach shall not operate as a waiver of such breach. No provision, covenant, or condition of this Lease may be waived by Management unless such waiver is in writing and signed by Management.

## 1.17  TIME IS OF THE ESSENCE AND SERVICE:

Time is of the essence of this Lease. All references to any notice required to be given, or due dates for rental payments, shall be strictly construed and any binding notice required herein shall be in writing and submitted via online website, hand-delivered or mailed registered or certified mail in accordance with the provisions herein, unless stated otherwise herein. Resident hereby appoints the person in charge of or occupying Premises at the time, as his/her agent to receive the service of any dispossessory or distress proceedings and notices hereunder, and all notices required under this Lease, and if no person is in charge of or occupying the same, such service or notice may be made by attaching the same on the front entrance of Premises. For purposes of compliance with the provisions of O.C.G.A. 44-7-3, Management hereby states that All 3 Realty, whose address is **102 Love Street, Stockbridge, GA 30281**, is authorized to manage the Premises and to act for and on behalf of Management for purposes of serving of process and receiving and receipting for demands and notices. Remedies Cumulative: All rights and remedies available to Management by law, including but not limited to those described herein, shall be cumulative and concurrent.

4

## 1.18  MORTGAGE'S RIGHTS:

Resident's rights under this Lease shall at all times be automatically junior and subject to any Deed To Secure Debt, or Trust, which is now, or shall hereafter, be placed on Premises. If requested, Resident shall execute promptly any certificate that Management may request to specifically implement the subordination described in this paragraph. Should Property go into foreclosure, Resident shall hold Management harmless from any damages or losses which might incur to Resident from said foreclosure.

## 1.19  DEFAULT:

**(a)** If Resident fails to pay rent or any other sum when due, or otherwise fails to abide by and perform any of the obligations, terms, conditions, or provisions of this Lease, including but not limited to, failure to reimburse Management for any damages, repairs, or costs when due, abandonment of the Premises, or violation of any Rules and Regulations set forth herein, or the community association rules, each and any such breach shall constitute a default under this Lease.

**(b)** If such default continues for three (3) calendar days after written notice of default, Management may, at its option, terminate this Lease by written notice to Resident.

**(c)** Management, as Resident's agent, may enter upon and take possession of the Premises and re-lease the Premises at the best rental price obtainable by reasonable effort, and for any term, and for any rent, upon such terms as Management deems proper. Resident shall be liable to Management for the deficiency, if any, between Residents rent hereunder and the rental price so obtained by Management by reoccupying.

**(d)** Any action hereunder by Management shall not prejudice any rights of action against Resident as provided in this Lease or by law, and Management shall not be guilty of trespass or forcible entry as a result of such entry and repossession of the Premises by Management.

**(e)** Should Management file a dispossessory action with the county to enforce payment of rent, outstanding charges or other actions of the Resident, Resident agrees to pay $**200.00** to cover filing and administrative costs.

## 1.20  EARLY TERMINATION:

**(a)** Provided Resident is not in default hereunder at the time of giving notice, has strictly complied with all of the provisions of this Agreement, is current with all fees due Management, Resident may terminate this Lease before the expiration date by:

- **(1)** giving Management at least thirty (30) days written notice sent via management website, by certified or registered mail, return receipt requested; plus,
- **(2)** paying all monies due (rent and costs) through date of termination; plus,
- **(3)** paying an amount equal to *1.5 months penalty*; plus,
- **(4)** return the Premises in clean and ready to rent condition.  The foregoing shall not relieve Resident of his/her responsibilities and obligations regarding any damages to Premises. No prorating will be given for percentage of lease term completed by Resident.

**(b) If Resident vacates the Premises before the Anniversary Date, and fails to follow the Early Termination clause precisely as stated above,** this shall be called an abandonment, Resident will be in default of their Lease and damages will include all expenses incurred by the owner, and/or Management, to get the Premise reoccupied, (or to the next Anniversary Date of the lease) including, but not limited to, lost rent to day of reoccupation, utilities and lawn care during vacancy, Procurement Fee and advertising charged the owner to re-rent the Premises, plus property/physical damages from the move-out inspection. Management will aggressively attempt to re-rent the Premises so as to limit damages and Resident will be responsible for the exact costs incurred as a result of Residents abandoning the Premises. Said expenses will be due even if the owner elects to sell the Premises instead of re-renting it.

**(c) Early Release of Single Occupant:** A single occupant requesting to vacate from an active lease with multiple occupants will be required to sign an amendment waving their right to the security deposit. The remaining occupant (s) will be required to pay an additional deposit equal to one months rent. Deposits will be eligible for refund at the time of move out.

## 1.21  RULES AND REGULATIONS:

**(a) Non-operative vehicles:** are not permitted on Premises. Management may remove any such non-operative vehicle, or any vehicle parked on grass, at the expense of Resident and Resident owning same shall have no right of recourse against Management thereafter.

**(b) Storage:** Resident agrees not to store any materials on the Premises, of any kind or description that are combustible, flammable, hazardous, or would increase the risk of a fire and any violation of this paragraph may serve as a basis for declaring the Resident in default. Any storage of said materials shall be at the Resident's risk and Resident shall indemnify Management, and the owner of the Premises, for any damages resulting from, and any loss caused by, said materials. Should Resident leave hazardous material in or around the Premise at time of vacating, Management shall remove and Resident agrees to pay said cost of removal.

**(c) Housekeeping:** The Resident agrees to maintain the Premises in as good a state as he/she finds it. Good housekeeping is expected of everyone. Resident agrees to keep his/her quarters in a clean and sanitary condition and to keep the yard clean, mowed, and free of rubbish and to comply with any neighborhood covenants, rules or regulations that govern the condition of the Premises.

**(d) Utilities:** Utilities to the Premises including garbage, water and sewer charges, electricity and gas, cable and security system monthly charges shall be the responsibility of Resident from the day of Possession until the move out inspection has been completed by Management,

unless otherwise outlined in a Special Utility Exhibit. If Resident fails to transfer utilities into their name by the move in date and Management has to allocate utility charges between owner and Resident, Resident agrees to reimburse Management for unpaid utilities bills plus a $ 50.00 a month per utility admin fee until utilities are on in Resident's name.

**(e) Freezing of Pipes**: To help in preventing the freezing of pipes, Resident agrees that when the temperature outside falls below 32 degrees F, Tenant Shall: (1) leave the thermostat regulating the heat serving premises in "on" position and set to a minimum of 60 degrees F; and (2) leave the faucets dripping.

**(f) Mold and Mildew**: Tenant acknowledgers that mold and/or mildew can grow in any portion of the premises or property that exposed to elevated levels of moisture and that some forms of mold and mildew can be harmful to their health. Resident therefore agrees to regularly inspect the premises for mold and/or mildew and immediately report to Management any water intrusion problems or mold and/mildew (other than in sinks, showers, and toilets). Tenant shall not block any ventilation ducts located on the premise. Tenant acknowledges having read the "A Brief Guide to Mold, Moisture in Your Home" Found at www.epa.gov and shall follow the recommendations contained herein.

**(g) Washer & Dryer (if applicable) :**If there is a present washer & dryer on the property at the time of move in, these items are NOT warrantied. If the washer or dryer becomes inoperable during your tenancy, the owner will remove the appliance completely. It will be the occupants responsibility to replace at their convenience.

## 1.22 ATTORNEY AND COLLECTION COSTS:

**If Management breaches this Lease,** Management agrees to pay all costs of collection of said sums if it must be collected by an attorney-at-law.

**If Resident breaches this Lease,** Resident agrees to pay all costs of collection of said sums if it must be collected by an attorney-at-law in addition to unpaid charges (including charges allowed under this Lease and damages to the Premises) to Management within ten (10) days of the time Resident is notified of the breach. If Resident fails to pay the unpaid charges demanded within thirty (30) days of vacating the Premises. Resident also agrees to pay any and all costs, including mediation and arbitration fees, filing costs, attorney's fees and costs, and any fees and costs awarded by a Court, if such sums are collected through a legal proceeding.

## 1.23 RESIDENT IMPROVEMENTS:

**(a)** Resident may not paint, wallpaper, or otherwise change the cosmetics of the Premises unless Management approves of Resident's selection of materials and quality of workmanship, in writing, in advance of said work. In any event, Resident agrees to return Premises to its original condition if requested by Management.

**(b)** Resident may not remodel and make structural changes without Management's written permission and approval of materials and workmanship. Resident has no authority to incur any debt, or make any change against the Premises or Management, or to create any lien upon said Premises for work done or material furnished, or to act as agent for Management at any time for any purpose.

**(c)** Resident warrants that any repairs, refurbishments or work performed on the Premises by Resident or performed by anyone hired, retained or appointed by Resident, will be done in a good and workmanlike manner and will be undertaken only by licensed, insured and qualified professionals under the direct supervision of the Resident, who will be fully accountable for all payments for said improvements, and to hold Management free from harm or loss arising from claims of any other parties, regardless of cause, which might result from said work.

**(d)** Any alterations or changes that Management does permit, shall become part of the Premises and shall remain in the Premises at all times during and after the term hereof.

## 1.24 HOMEOWNERS ASSOCIATIONS:

**(a)** The Premises may be located in a community that may maintain amenities such as a clubhouse, golf, pool, tennis, exercise facility, laundry, or similar amenities or provide some utilities services to the Premises. With respect to such homeowner's associations and/or amenities, Management makes no representations as to:

- **(1)** whether any association exists;
- **(2)** whether the owner is a member and is current with any applicable dues;
- **(3)** whether such amenities are available to a Non-Owner Resident, including a tenant. Management encourages Resident to fully investigate the availability of such amenities, and to determine whether such amenities would be available to a person in a tenancy situation, the cost thereof and any and all other factors which might be important to Resident in selecting this Premises.

**(b)** Resident expressly releases Management of and from any and all duties to investigate such amenities and from any representations regarding such amenities whatsoever. Resident expressly acknowledges that Resident has made such independent inquiry as Resident so desires regarding any amenities offered by a community or homeowner's association and releases Management of and from any and all liability in connection therewith.

**(c)** If a homeowner's association exists, the Premises may be subject to various rules for the community. Resident herewith acknowledges that Resident is responsible for obtaining a copy of the homeowner or community association rules, which are a matter of public record, reading them and complying with their terms. Any breach thereof may constitute a default as defined herein.

**(d)** Should notice be received by Management (or owner) regarding a violation of said rules and regulations, Management shall notify Resident of said violation in writing. If Resident fails to correct the violation within ten (10) days of said notice, Resident agrees to pay for the cost of Management resolving the problem (if it can be resolved), or Management may default the Lease and require the Resident to vacate the Premises. If the association should fine Management (or owner) for the actions, inactions, conduct or behavior of Resident, or Resident's invitees or guests, for failure to comply with the rules and regulations of the community where Premises is located, Resident agrees to pay said fines within ten (10) days of notice by Management to Resident plus a $*25.00* (per violation) for Management's involvement in the event. Failure to pay said fines may result in a breach of this Lease.

## 1.25  SIGNATURES AND FAXES:

These Premises cannot be leased without the signature of each adult party who will be residing in the Premises. Management and Residents agree this Lease can be signed by duplicate originals. Electronic signatures, faxed signatures, and properly executed Power of Attorneys, are deemed acceptable.

## 1.26  AGENCY DISCLOSURE:

**(a)** Management's office brokerage relationship policy is to represent Owners as Sellers and/or Landlords (Seller Agency and Owner Agency), Buyers (Buyer Agency), and Sellers and Buyers in the same transaction with Designated Agency, and Transaction Brokerage. Management is a licensed Real Estate Broker and as such, is representing the Owner in this transaction unless otherwise described on an attached Agency Disclosure.

**(b) Authority Over The Lease:** All parties acknowledge that Management is authorized by the owner of the Premises to manage this Lease. This Lease is between Resident and Management, the owner has no authority over it and Resident agrees not to communicate with the owner while under this Lease. In the event that Management relationship is terminated with the owner during the term of this Lease, Resident hereby releases Management of and from any liability under this Lease, provided Management has notified Resident by certified and regular mail of the termination, including in said notice the following:

- **(1)** effective date of termination;
- **(2)** name and address to whom rent is to be sent;
- **(3)** telephone number of person responsible for repairs; and
- **(4)** copy of check turning over Resident's Security Deposit to owner or new manager.

**(c) Buying the Property:**  Resident acknowledges that Management has an exclusive brokerage relationship with the owner of the Premises, which includes the payment by owner to Management of a real estate commission if Resident purchases the Premises. Resident agrees to communicate solely with Management regarding any interest or offers to purchase said Premises. Should Resident contract with another real estate agent to represent him/her in the purchase of this Premises, Resident agrees to pay their agent personally and not look to the seller, or Management, for their agent's compensation. Should Resident breach this stipulation, and buy the Premises without inclusion of Management, Resident agrees to pay Management for damages, including but not limited to a real estate commission of *3* percent (3%) of the sales price, plus collection costs and attorney fees.

## 1.27  RECEIPT OF IMPORTANT DOCUMENTS:

Resident acknowledges they have received the following documents prior to executing this Lease:

**(a) On all homes built prior to 1978 :** Booklet Protect Your Family from Lead in Your Home;

**(b)** Management's Official Resident Handbook (which will be kept on-line and available to Resident 24/7);

**(c)** A copy of the housekeeping documents Resident(s) signed prior to taking possession of the Premises, which altogether are incorporated into and made a part of this Agreement by reference.

## 1.28  LEGAL NOTICE FEE:

Should Management be required by this Lease, or the Georgia Landlord Tenant law, to send a legal notice (certified letter) to Resident, Resident agrees to pay a $*5.00* administrative fee.

## 1.29  MAINTENANCE CHARGE-BACKS, REKEYING AND STAND-UP FEE:

**(a)** Should Resident request maintenance be done on the Premises which servicing contractor reports was caused by the abuse or misuse of Resident or their invitees, Management shall provide the invoice for such repair to Resident and Resident agrees to pay such sum no later than the first of the month following notification. Should Resident fail to pay said sum as stated herein, Resident may be deemed to be in default of the terms of this Lease.

**(b)** If Resident vacates the Premises, without returning to Management keys to the Premises, garage door openers, or access keys to the community amenities, Resident shall reimburse Managements for costs to replace same.

**(c)** Should an appointment be scheduled with Resident for any purpose and Resident not show up or refuse access, Resident agrees to pay Management $*75.00* for the missed appointment.

**(d) Re-Key Fee Paid By Tenant upon Lease Termination $75.00**

**(e)Assigned Property Lockboxes:** Resident agrees to maintain combination lockbox assigned to property address. Resident agrees to ensure box is accessible with key upon request from management. Access to property includes but is not limited too periodical walk through, maintenance appointments, move outs, etc. Loss of combination box at the time of move out will result in a $50.00 fee.

## 1.30  NEIGHBORHOOD CONDITIONS AND SECURITY DISCLAIMER:

**(a)** Resident acknowledges that every neighborhood has conditions which different tenants may find objectionable including without limitation stadiums, crime, land-fills, quarries, high-voltage power lines, airports, odorous factories, schools serving the Property, cemeteries, land use and transportation maps. The Residents shall be responsible to become familiar with any present or future neighborhood conditions which could affect the Premise. If Resident is concerned about the possibility of a registered sex offender residing in area of the Premise, Resident should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation website at www.gbi.georgia.gov**.**

**(b)** Resident acknowledges that crime occurs in every community and Management is not a provider of security regarding the Premises. Resident acknowledges that prior to occupying Premises they have inspected all window locks, door locks, exterior lighting and found them to be in good working condition. If during the term of the Agreement any of the above items stop functioning properly Resident agrees to notify Management immediately in writing.

## 1.31  SMOKE DETECTORS AND RENTER'S INSURANCE:

**(a)** Upon move in (and regularly thereafter) Resident agrees to test the smoke and carbon monoxide detectors to make sure they are functioning properly. The Resident is responsible to keep working batteries in all smoke and carbon monoxide detectors. If devices do not operate properly after Resident replaces the batteries, Resident shall give Management written notice and Management will replace the devices.

**(b)** The owner's landlord insurance does not cover Resident's personal property or the normal liability hazards of living in a home. Resident is encouraged to get renters insurance to protect their belongings from fire, loss of food due to power outage, flood, theft, wind and tornados. Resident's enrolled in Resident Benefit Package have managements minimum requirements covered for Renters Insurance.

**(c)** Carbon Monoxide Detectors may or may not be affixed to the residence. It is the sole responsibility of the resident to identify whether the home is equipped with a Carbon Monoxide Detector. If the residence does not include a Carbon Monoxide Detector, management agrees to allow resident to purchase and mount per the resident's discretion.

## 1.32  HVAC FILTERS:

A portion of Resident's total amount due will be used to have HVAC filters delivered to their home approximately every 90 days under the Resident Benefit Package. Resident shall properly install the filter that is provided within two (2) days of receipt. Resident hereby acknowledges that the filters will be dated and subject to inspection by Landlord upon reasonable notice to verify replacement has been timely made. If at any time Resident is unable to properly or timely install a filter Resident shall immediately notify Landlord in writing. Resident's failure to properly and timely replace the filters is a material breach of this agreement and Landlord shall be entitled to exercise all rights and remedies it has against Resident and Resident shall be liable to Landlord for all damages to the property, A/C or heating system caused by Resident's neglect or misuse.

## 1.33  SMOKING:

No smoking is allowed inside the premises. If there are signs of smoking, the tenant realizes that the walls will likely need to be sealed with primer and repainted. Tile grout will have to be cleaned and carpet replaced to rid of the smoke odor. The cost will be incurred solely by the tenant. Outside smoking area must be left clean and free of cigarette butts and trash. A minimum $500.00 fine will be assessed if violation occurs.

## 1.34  MANAGEMENT COMMUNICATION:

Resident(s) agrees that management can send management communication through means of email, postal mail, phone, and mobile texting.

## 1.35  SEVERABILITY:

In the event that any part of this lease is construed as unenforceable, the remaining parts of this lease shall be in full force and effect as though the unenforceable part or parts were not written into this lease.

## 1.36 ENTIRE AGREEMENT:

This Lease, and any incorporated or attached written Exhibits or Addendums, shall constitute the entire agreement between the parties and no oral statement or oral modification of the terms of this Agreement, or advertising, or flyer, or promotional materials, except that which is described herein, shall be binding, create or form any part of an agreement between the parties. This Lease can only be amended in writing and signed by all parties to this Agreement.

## 1.37 MATERIAL RELATIONSHIP DISCLOSURE:

Broker and/ or their affiliated licensees disclose the following material relationships. _____ N/ A_____

By initialing below, you acknowledge and agree to the terms in Section 1.

X 
Tiana Rooks

# 2. Fireplace Addendum

## 2.1 FIREPLACE ADDENDUM

It is agreed and understood that any fireplace located on this property is for *occasional enjoyment purposes only*. Fireplace **WILL NOT BE USED AS A HEAT SOURCE**. Landlord may revoke this Fireplace Addendum if change in insurance overage, signs of misuse or damage from the fireplace or chimney, or any lapse in renter's insurance liability coverage.

Tenant agrees to the following if they use said fireplace:

1. If tenant uses Fireplace other than as decorative, Tenant agrees to show paid receipt from licensed professional for fireplace/chimney cleaning and inspection at lease end by a licensed contractor, or once per year if lease term is over one year
2. Tenant must maintain required renter's insurance liability policy listing owner as additional interest
3. Tenant will be responsible for any damages caused by Tenants use of fireplace, and it will not be considered normal or reasonable wear and tear.
4. Tenant agrees to use only dry seasoned hardwood and acknowledges that wet green wood or soft wood can leave harmful residue and tenant will be reasonable for damages or cleaning.
5. If tenant uses the Duraflame-style fire logs, Tenant will follow proper instructions to prevent damages to chimney.
6. Tenant agrees to keep firewood stored safely, securely, dry and away from the house, off ground to prevent pests, snakes, mice, etc and comply with HOA rules. Tenant responsible for removal if an issue arises.
7. Tenant will not overfill the fireplace or create a "blazing" fire that could damage the firebox or cause a fire and will use a fireplace screen at all times; will be responsible for repair or replacement of carpet damaged by fireplace.
8. Tenant agrees to dispose of cold ashes or coals in a safe, responsible manner, never will place hot coals in a container such as a garbage can, paper bag, etc; and will never store any coals near any combustibles.
9. Tenant agrees to exercise common-sense safety measures including but not limited to opening the flue when in use, not leaving fire unattended, proper oversight when children or pets are nearby, etc. Tenant assumes responsibility for keeping the chimney clear of any obstructions.
10. Tenant agrees to not allow persons under the age of 18 to operate the fireplace.

By initialing below, you acknowledge and agree to the terms in Section 2.

X 
Tiana Rooks

# 3. Lead Based Paint Disclosure

### 3.1  EXHIBIT A

The U.S. Department of Housing and Urban Development requires any Lesser of residential real property build prior to 1978 to (1) notify the Lessee of any know lead-based paint or lead-based paint hazards in the Premises to be sold or occupied, (2) provide the Lessee with any lead-based paint risk assessments or inspections in the Lessor's possession, and (3) provide the Lessee a 10-day opportunity, or other mutually agreed upon period, to conduct or obtain a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards. Lessee is advised to conduct or obtain such assessments or inspections during the inspection period.

By initialing below, Lessee acknowledges:

- That the residence(s) and building(s) included in the lease agreement were constructed prior to 1978 and that the Lessee has received the Disclosure of Information on Lead based paint and Lead-based Paint Hazards, and any report, records, pamphlets and/or other materials referenced therein, including the pamphlet "Protect Your Family From Lead in Your Home". Or

By initialing below, you acknowledge and agree to the terms in Section 3.

X 
Tiana Rooks

# 4. Renters Insurance Addendum

### 4.1  RENTERS INSURANCE ADDENDUM

This Addendum is attached to and becomes a part of, the Residential Lease Agreement between Landlord and Resident (or "You"). Both parties are bound by the terms of this addendum. You are required to maintain and provide the following minimum required insurance coverage for the benefit of Landlord:

$100,000 Limit for Resident's legal liability for damage to Landlord's real improved and personal property, including any fixtures, for no less than the following causes of loss: fire, smoke, explosion, backup or overflow of sewer, drain or sump, water damage ("Required Insurance").

You are required to furnish Landlord with evidence of Required Insurance acceptable to Landlord (i) prior to occupancy of leased premises, (ii) at the time of each lease renewal period, and (iii) as may be requested by Landlord during the Lease Agreement. To satisfy the insurance requirement. You may either **(1) Do Nothing and be automatically enrolled in AssetProtect;** or **(2)** Opt Out of AssetProtect and purchase substitute renters insurance on your own.

**OPTION 1:  DO NOTHING AND PROTECT YOUR PERSONAL BELONGINGS!**

Your acceptance of AssetProtect is optional. However, AssetProtect is included in the mandatory Resident Benefit Package. Whether or not You accept AssetProtect will not affect whether your lease application is approved or the terms of the lease. Unless You choose to opt out of AssetProtect, You will be enrolled in AssetProtect and the cost will be included as part of your monthly charges, inclusive of premium, taxes, and fees. No further action is required. Coverage will begin on the lease effective date.

AssetProtect includes a Contingent Personal Property Contents Coverage Endorsement in the amount of $5,000.

**OPTION 2:  OPT OUT**

In lieu of accepting AssetProtect, You may obtain Required Insurance from an insurer of your choice that is satisfactory to Landlord. If You furnish evidence of such Required Insurance and maintain the Required Insurance for the duration of the lease agreement, then nothing more is required. Landlord shall have the right (but not the obligation) to purchase Required Insurance on Your behalf and seek reimbursement from You for all costs and expenses associated with such purchase, in addition to any other rights under the Lease Agreement. Coverage is contingent upon payment of insurance premium.  To opt out of AssetProtect, You must register your third-party policy by going to www.APenroll.com to upload your third-party declarations page.


**BY INITIALLING THIS RENTERS INSURANCE ADDENDUM, YOU ARE "OPTING IN" TO ASSETPROTECT WHICH IS INCLUDED IN THE RESIDENT BENEFIT PACKAGE.**

By initialing below, you acknowledge and agree to the terms in Section 4.

X_____
Tiana Rooks



# TENANT HANDBOOK



# Table of Contents

Welcome Letter:----------------------------------------------------------------3

General Info:----------------------------------------------------------------4

(Contact Info, Address, Website)

Policy Information:----------------------------------------------------------5

    Important Policies:------------------------------------------------5
    Submitting maintenance requests:--------------------------------6

Moving In:------------------------------------------------------------------7

Paying Rent:----------------------------------------------------------------8

Emergency Procedures:----------------------------------------------------9

Tenant Responsibilities:--------------------------------------------------10

Moving Out:--------------------------------------------------------------11-12

Thinking about buying a home?------------------------------------------12

# Welcome Letter!



Dear New Tenant(s)!

All 3 Realty, LLC would like to welcome you to your new home! We pride ourselves on providing excellent service & quick response. We look forward to being of great service to you during your tenancy. We have prepared this Tenant Handbook to help guide you & assist you in answering basic questions that may arise.

Our goal is to be readily available to you at all times! Along with exceptional customer service, we also provide you with tools to make your life easier. This includes 24-hour access to our website to process rental payments & submit maintenance requests. It also includes office # texting capabilities. You can text 678-782-7887 to be directed to the proper contact.

We hope that your living experience with us will be a pleasant, comfortable & a memorable one! Please feel free to contact us with any questions or concerns at ANY time!

We look forward to working with you.

Sincerely,

The Team @ All 3 Realty



# General Information:

**-Contact Info-Physical Address-Company Website-**

## All 3 Realty, LLC

Pamela Coley, Broker/Owner AL & GA – pcoley@all3realty.com
J Arthur Coley, Owner– jcoley@all3realty.com
Trent Ratliff, President of Management – trent@all3realty.com
Kayla Sharp, Property Mgr/Realtor– ksharp@all3realty.com
Barb Dull, Accounting – bdull@all3realty.com
Jake Schwab, Maintenance Manger – jake@all3realty.com
Charlotte Cheng, Maintenance Coordinator – maintenance@all3realty.com
Felicia Gilmer, Leasing Specialist/Realtor AL & GA – fgilmer@all3realty.com
Nicole Bastiste, Leasing Specialist/Realtor – Leasing@all3realty.com
Robin Slicker, Director of Administrative Services – admin@all3realty.com
Kendra Rodgers, Communications, info@all3realty.com
Max Moore, Field Manager , fieldmanager@all3realty.com

Office: 678-782-7447
Fax: 404-596-8515
www.All3Realty.com

## Physical Address:

102 Love Street, Stockbridge, GA 30281

## Website:

www.all3realty.com

## Office Hours:

The office is open Monday-Friday from 8:30am-4:30pm and 4pm on Fridays. We are available 24/7 and can be contacted via email or by phone 678-782-7447. In case of an emergency, please call 911.

# Policy Information:

## -Important Policies-

- Rental Agreement: The duration of your rental agreement is fixed and specified in the document. An early termination or extension must be discussed with the Property Manager.

- Security Deposits: Your security deposit cannot be used to pay last month's rent or any other month's rent.

- Pets: Pets must go through Petscreening.com please view website for more details

- Keys: If you lose your keys or lock yourself out of your home during business hours, you may contact the office to receive a copy of your key at no charge. If you call after 5:00pm on the weekdays or any time on the weekends, you will be responsible to pay a minimum of $75.00 fee.

- Yard & Grounds Maintenance: If you are responsible for maintaining your yard, upkeep of flower beds and lawn care is expected. Please refer to your rental agreement for more details.

- Homeowners Association- If the premises are subject to a Homeowners Association (HOA). Any fines assessed against Landlord/Owner by HOA for rule violations or misconduct by Tenant shall be considered additional rent which tenant shall pay upon notice of Landlord.

- Vehicle Parking: Only approved and operational vehicles in designated areas are allowed. Please refer to your rental agreement for more details.

- Guests: A guest(s) staying for more than 14 days will require approval by the management company. No person not listed on the Lease may reside inside the home. Consult your rental agreement for more information.

- Noise: You are subject to all laws pertaining to noise and your rental agreement

- Routine Maintenance: As you become more settled in your new home, it is important to manage routine maintenance items. Here are some examples of maintenance items you are responsible for:

    - Replacing light bulbs
    - Cleaning/Replacing of furnace filters (if applicable)
    - Regular yard & law maintenance (if applicable)
    - Replacement of batteries in smoke detectors and $CO_2$ detectors



# Resident Benefit Package:

All leases require resident enrollment into the Resident Benefit Package. There will be a $25.00 per month charge for this package. We will facilitate these programs with no action needed from our residents.

1. Renter's Insurance Policy: All 3 Realty has established an umbrella policy that will give all residents under this policy a $100,000 liability and $5000 in content coverage.  This service alone is valued at around $20 a month.

2. HVAC Filters:  When renting a home, the resident is expected to maintain the filters during the lease term. (This is required in your current lease).  This means the resident has to know the size and remember to purchase the filter at the store. NOT ANYMORE! All 3 Realty has worked out a plan with a third party company that will deliver time stamped filters to your home when it's time for them to be changed. It is only your responsibility to switch them out when they show up at your doorstep. This is a valued at over $10 a month.

3. Claim Assistance: The deductible for a Renter's policy is $500 for a claim. All 3 Realty will split this deductible with the resident should the resident need to file an insurance claim. (Flood, Fire, etc)

4. Tenant Portal/ Payment Processing: Online payment processing and rent reminders. Valued at $5 a month

5. Texting Capabilities: All 3 Realty has invested in software that will allow the resident to get immediate responses through texting our office number. (678-7827447) We realize that many residents prefer to text and not email, so we added a service called Podium to allow you to communicate with our office in your preferred way. This includes being able to create maintenance work orders and upload photos!

6. Waive of 1 Late Fee: All 3 Realty realizes that over the course of a year lease that a resident might require a couple of extra days to pay their rent. Because of this, All 3 Realty will waive one late fee per contract year if the funds are paid before the 10th of the month. Valued at $100.

7. Rental Kharma: Do you want to have your rent payments reported to the credit bureau? You can now use Rental Kharma to record your rental payments and raise your credit score. Our discount rate is 30% off with Rental Kharma. As part of the Resident Benefit Package, we will provide you with the discount code for All 3 Realty residents.

8. Utility Concierge: At the time of move in, we have a relationship with Citizen Home Solutions who provides free help with the utility setup process.

9. WE ALLOW PETS: We have partnered with a company called Pet Screeners. This company applies the pet's and the owner's information to generate their "FIDO" score and rates the risk involved. Based on the risk factors, the resident will pay a monthly pet admin fee. Your pet will need to go through the pet screening process at  https://a3r.petscreening.com/ .

# Submitting Maintenance Request:



- If a maintenance issue should arise, please complete a maintenance request by submitting a service request online at <u>www.all3realty.com/maintenance</u>

- Please submit maintenance requests online so that you can be as specific as possible about the problem. If you are unable to submit the request online please text your maintenance request to 678-782-7447 or call or office to have an agent assist you.

- Tenants are responsible for securing any pets that may be encountered on the visit to the property.

- If a technician is unable to gain access to the property after coordinating a time and date with you, a $75.00 trip fee will be charged.

- Lockboxes assign to the individual property for property access will need to remain on the premises. Occupants will be responsible for ensuring keys are placed in them for maintenance appointments, move outs, periodicals, etc. All appointments will be schedule with property notice to occupants per the terms of the lease.



# Moving Into Your New Home:

## Utilities:

Prior to commencement of the lease term, you are required to transfer the utilities to your name for the property AND provide the account numbers on the "Welcome Letter" sheet. Your leasing agent should provide a list of possible providers in your area. If utilities are not transferred within 3 business days of move-in this will result in a $50.00 additional rent on the 4th day plus any incurred charges.

## Move-In Inspection:

You will have to meet your leasing agent at your new home to conduct a "Move in Inspection". This process normally takes no longer than 30 mines.  The Move-In Inspection protects you as a tenant. The purpose of the Move in Inspection is to document the condition of the premises before tenant takes possession, not to create a punch list of repairs to be completed. Landlord will not repair any cosmetic or non-functional items such as carpet blemishes, chipped sinks, etc. nor do any interior or exterior painting or any other repairs unless specifically agreed to by the Landlord in writing prior to move-in. Tenant may not rely on any verbal statement made by a management representative that such repairs will be made. Tenant taking possession of the premises shall be evidence that the premises is accepted "AS-IN" by the tenant.



# Paying Rent:

## When is rent due?

Rent is due on the 1st of each month & is considered late on the 5th.  If you pay your rent after the 5th @ 12:00 a.m. you will be issued a $100.00 late fee. If rent is not paid in full by the 15th, dispossessory action will be filed against you.

## How to pay rent:

**ONLINE:** Rent can be paid online at [www.all3realty.com](www.all3realty.com). Via your online portal

**MAIL:** If you do not have access to the internet, you may mail your payment by money order or certified check to:

102 Love Street, Stockbridge, GA 30291

If paying by mail, the payment must be received by the 5th of each month or it will be considered late & late fees will be charged.

**PAY NEAR ME:** Conveniently make payments at your local CVS. Contact our office for more details on how to use this payment method!

**DROPBOX**: We have an afterhours dropbox located at our 102 Love Street Address to the right side of the steps.



## Important Considerations when paying rent:

Place your name & property address on the certified check or money order to ensure that you are properly credited with rental payment.

Review your certified check or money order & ensure that it has the name of the Payer & Payee.

DO NOT MAIL CASH UNDER ANY CIRCUMSTANCE.

If a rent check is returned for insufficient funds (NSF), all charges include NSF and late fees will be charged directly to you.



# Emergency Procedures:

<span style="color:red">In the case of a medical, fire, or other emergency situation that could involve immediate peril to you or someone surrounding you, please call 911.</span>

## Maintenance Emergency Procedures: If you experience an emergency situation, please follow the steps outlined below. As a note, if the problem occurs in the middle of the night, it is very unlikely we will be able to dispatch a contractor to the property until the next morning.

- The specific definition of a maintenance emergency is:
  - An issue that is dangerous, hazardous or if not addressed immediately could cause damage to the property or your personal well-being (ex. Flooding, no heat in the winter or gas leak).
- An emergency is NOT:
  - Annoying sounds, appliance malfunction, A/C failure, drain stoppage, etc... While inconvenient, these are not considered emergencies and will be handled by our office on the following business day.
  - Although an A/C issue is not technically defined as an emergency, we do understand how hot summers are here in Georgia and can sometimes be unbearable during the summer.
- If the situation is considered a maintenance emergency and occurs during normal business hours, please call our office, then follow-up with a formal service request submitted online.
- If the situation occurs after business hours, please call our main office line at 404-520-8959. If you reach a recording, leave your name, phone number, address and the type of emergency.

# Check list for Emergency failure (prior to contacting the Property Manager):

For Electric/Gas Heat:
- Check the thermostat to see that the controls are set properly
- Check all fuses and circuit breakers
- Check the access panel to the blower compartment to ensure the panel is securely closed
- Check the filTer and ensure it has been replaced in the last 6 months
- Test any other gas appliances to determine if service has been interrupted (if applicable)



For Water Related Issues:

- If water is running onto floors from any appliances, fixture or piper, close the shut-off valve for the appliances/fixture or shut-off the main valve for the property. I

## Tenant Responsibilities:

The following items are the responsibility of the tenant at their expense while they are living at the property-

- Replacement of light bulbs with the correct wattage

- Replacement of cleaning of furnace and air conditioning filters every 3 months.

- Replacement of smoke alarm batteries. The property must have working smoke alarms <u>at all times.</u>

- Reporting non-functioning smoke alarms immediately if batteries do not solve the problem.

- Reporting all necessary repairs.

- Professionally steam cleaning and spot cleaning carpets while living in your home

- Normal insect control (bees, spiders, sugar or nuisance ants, etc.)

- Normal rodent control, such as mice.

- Keep property clean, inside & out, free of grease, mold, mildew, cobwebs, etc.

- If you are responsible for lawn maintenance, you need to mow, water, weed, and dispose of all yard debris on a regular basis.

- If you have a pet, all pet droppings need to be disposed of regularly.

- SMOKING or VAPING IS NOT PREMITTED INSIDE THE PREMISES. If there are signs of smoking, the tenant will be liable for costs incurred to perform the following services: prime & paint walls, professional clean all floors & in some cases replace carpets.

# Moving Out:

12

## Move-Out Notice:

A written move out notice needs to be submitted to All 3 Realty, LLC 30 days prior to vacating the property **VIA OUR WEBSITE**. There is a link under RESIDENTS that says NOTICE TO VACATE.

***Tenants, who do not provide sufficient notice to vacate or deliberately break their lease, are responsible for the remaining rental period.*** Please consult your lease agreement for additional information.

## Cleaning up & Clearing out:

We understand that moving can be an incredibly stressful time. However, there are some important items to consider when moving, which if done property, will save you time & money in the long run. There is a level of cleaning that is required to return the home in the condition you received it.

a) Leave tile, vinyl and concrete floors swept, mopped & cleaned
b) Carpets must be professionally cleaned, FAILURE TO CLEAN WILL RESULT IN $250.00 FROM YOUR SECURITY DEPOSIT.
c) Leave porches and patios swept & cleaned. All belongings removed.
d) Close & lock all windows, lock all outside doors and return all keys to management.
e) Tenant to clean vent hood, top & interior of stove, oven, microwave, dishwasher & refrigerator.
f) All bathrooms are to be cleaned. Clean out cabinets, scrub toilets, sinks & tubs.
g) Wash all mirrors with glass cleaner
h) Wash all windows & window seals
i) Remove all belongings & trash
j) Report to management any problems you may have in the unit.

Any required work not completed by the tenant will be completed by All 3 Realty, LLC and deducted from the security deposit. Once you have removed all personal property and have completed the cleaning of the home, please contact us for a final move out inspection. Leave all door keys, storage unit keys or locks, garage door openers, fixture remotes, pool keys/cards and mail box keys with All 3 Realty, LLC.

## Security Deposit Refund:



Once you have completed moving out, All 3 Realty, LLC will complete any repairs and cleaning not noted on your initial walk through and refund your remaining security deposit. ***WE CANNOT REFUND YOUR SECURITY DEPOSIT THE SAME DAY YOU MOVE OUT*** because we must ensure that all cleaning & repairs have been completed; utilities have been property transferred, etc. **Please make sure All 3 Realty, LLC has your forwarding address to send your security deposit refund to you. This refund will occur within 30 days.**

If the property was damaged or past due rent is owed in excess of your security deposit, we will contact you for the remaining payment. If you refuse to pay in full, we will take legal action and a judgment will be filed in court for the outstanding amount. Please consult your rental agreement for additional information.

## Thinking about buying a home?

If you are considering buying a home at the expiration of your lease, we can help you! We have an experience team in providing excellent service in purchasing new or pre-owned homes!

Call us today to speak with a REALTOR!

678-782-7447

All 3 Realty LLC



950 Eagles Landing Pkwy • Ste 487 • Stockbridge, GA 30281-7343
(678) 782-7447

5

All_3_Realty_-_Tenant_Handbook__Rev.0918___4_.pdf

X_____𝒯ℛ_____
Tiana Rooks

All 3 Realty LLC



950 Eagles Landing Pkwy • Ste 487 • Stockbridge, GA 30281-7343
(678) 782-7447

6

CB04_-_Lead-Based_Paint_Pamphlet__2019_.pdf

X_____𝒯𝑅_____
Tiana Rooks

## All 3 Realty LLC



950 Eagles Landing Pkwy • Ste 487 • Stockbridge, GA 30281-7343
(678) 782-7447

# 7. Sign and Accept

## 7.1  SIGNATURE PAGE

See exhibits(s) attached hero and made part of this agreement by reference.

(a) Tenant Handbook

(b) Housing Keeping Documents

(c) Maintenance Addendum

(d) Pro-Rated Rent Worksheet

(e) Utility Information Sheet

(f) Property Report/Walk-Through

(g) Security Deposit Addendum

## 7.2  ALL 3 REALTY

102 Love Street

Stockbridge, GA 30281

Brokerage # 66437

Phone: 678-678-7447 Fax: 404-520-8515

www.all3realty.com

## 7.3  RESIDENT CONTACT INFORMATION:

**Tiana Rooks**
Financially Responsible
(678) 412-5573 (Mobile)
(770) 722-3173 (Home)
TIANAROOKS@GMAIL.COM

X *Tiana Rooks*

Lessee                          IP Address: 172.58.3.245
                                02/06/2020 04:00pm EST

X *Kayla Rae Sharp*

Lessor                          IP Address: 24.178.124.78
                                02/24/2020 09:50am EST

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that, in accordance with BLR 5005-5 (Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing ***MOTION FOR RELIEF FROM AUTOMATIC STAY*** in the above-captioned contested matter with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, and specifically, to counsel of record for the parties in interest in this matter:

Karen King
King & King Law LLC
215 Pryor Street, S.W.
Atlanta, GA 30303
(404) 524-6400

Nancy J . Whaley
Nancy J. Whaley, Standing Ch. 13 Trustee
303 Peachtree Center Avenue
Suite 120, Suntrust Garden Pla za
Atlanta, GA 30303
(678) 992-1201

      Further, a true copy of the foregoing ***Motion for Relief from Stay*** has been served upon the following Respondents by depositing a copy of the same in the United States mail, first class postage prepaid, addressed as follows:

Tiana Rooks
7311 Howard Place
Jonesboro, GA 30236

Dated:  December 3, 2020

|  |  |
|---|---|
|  | Respectfully submitted, |
| THE GILROY FIRM | /s/ Matthew F. Totten |
| 3780 Mansell Road, Suite 140 | MONICA K. GILROY |
| Alpharetta, Georgia 30022 | (Georgia Bar No. 420527) |
| (678) 280-1922 (Telephone) | MATTHEW F. TOTTEN |
| (678) 280-1923 (Facsimile) | (Georgia Bar No. 798589) |
| Monica.Gilroy@gilroyfirm.com | ATTORNEYS FOR MOVANT |
| Matthew.Totten@gilroyfirm.com |  |

5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(ATLANTA)

| | |
|---|---|
| IN RE:<br>TIANA ROOKS<br><br>      Debtor.<br><br>_____<br><br>ALL 3 REALTY, LLC<br><br>      Movant<br><br>v.<br><br>TIANA ROOKS, Debtor<br>NANCY J. WHALEY, Trustee<br><br>      Respondents. | CASE NO. 20-71954<br>CHAPTER 13<br><br>JUDGE CAVENDAR<br><br><br><br>CONTESTED MATTER |

## <u>NOTICE OF HEARING</u>

  **PLEASE TAKE NOTICE** that **Movant ALL 3 REALTY, LLC** has filed a **Motion for Relief from Automatic Stay** with the Court in the above-referenced matter, seeking an order lifting the automatic stay as to certain real property located 7311 Howard Place, Jonesboro, GA 30236.

  **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion for Relief From Automatic Stay** in Courtroom 1203, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303 at **10:30 P.M. (ET)** on **Tuesday, January 5, 2020.**

  Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta, Georgia. You must also mail a copy of your response to the undersigned at the address stated below.

6

   If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date.  Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:  December 3, 2020

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Matthew F. Totten |
| THE GILROY FIRM | MONICA K. GILROY |
| 3780 Mansell Road, Suite 140 | (Georgia Bar No. 420527) |
| Alpharetta, Georgia 30022 | MATTHEW F. TOTTEN |
| (678) 280-1922 (Telephone) | (Georgia Bar No. 798589) |
| (678) 280-1923 (Facsimile) | ATTORNEYS FOR MOVANT |
| Monica.Gilroy@gilroyfirm.com |  |
| Matthew.Totten@gilroyfirm.com |  |

7

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that, in accordance with BLR 5005-5 (Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing ***Notice of Hearing*** in the above-captioned contested matter with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, and specifically, to counsel of record for the parties in interest in this matter:

Karen King
King & King Law LLC
215 Pryor Street, S.W.
Atlanta, GA 30303
(404) 524-6400
Fax : (404) 525- 6425

Nancy J . Whaley
Nancy J. Whaley, S tanding Ch. 13 Trustee
303 Peachtree Center Avenue
Suite 120, Suntrust Garden Pla za
Atlanta, GA 30303
(678) 992-1201

Further, a true copy of the foregoing ***Motion for Relief from Stay*** has been served upon the following Respondents by depositing a copy of the same in the United States mail, first class postage prepaid, addressed as follows:

Tiana Rooks
7311 Howard Place
Jonesboro, GA 30236

Dated:  December 3, 2020.

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 (Telephone)
(678) 280-1923 (Facsimile)
Monica.Gilroy@gilroyfirm.com
Matthew.Totten@gilroyfirm.com

Respectfully submitted,
/s/ Matthew F. Totten
MONICA K. GILROY
(Georgia Bar No. 420527)
MATTHEW F. TOTTEN
(Georgia Bar No. 798589)
ATTORNEYS FOR MOVANT

8